IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSA L. RUIZ-GONZÁLEZ,

Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

CIVIL NO.: 09-1841 (MEL)

**OPINION AND ORDER**

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Rosa L. Ruiz-González ("plaintiff" or "claimant") was born on September 22, 1961. (Tr. 116.) She has a 10th grade education, and worked as a school cook from 1995 until March 2002, when she claims that she could no longer work due to several ailments, including depression, fibromyalgia, muscle spasms, pain and weakness in her hands, back, chest and shoulders. (Tr. 131, 140-50, 181.)

On October 8, 2003, plaintiff filed an administrative claim for a period of disability and disability insurance benefits, alleging disability beginning March 6, 2002.[1] (Tr. 29.) Plaintiff's application for social security benefits was denied initially as well as on reconsideration. (Tr. 29, 79-81, 87-89.) After her timely written request for a hearing was granted, her claim was denied by

[1] Plaintiff's last date insured was December 31, 2007. (Tr. 205.)

an Administrative Law Judge ("ALJ") on February 9, 2007.[2] (Tr. 26-38.) The Appeals Council denied plaintiff's request for review of the ALJ's decision on June 24, 2009; therefore, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner" or "defendant"). (Tr. 5-7.)

On August 24, 2009, plaintiff filed a complaint in this case seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), claiming that the ALJ's decision was not based on substantial evidence. (Docket No. 1.) On February 9, 2010, defendant filed both an answer and a certified transcript of the administrative record. (Docket Nos. 11, 12.) Defendant has not filed a memorandum of law in support of its answer.

## II. LEGAL ANALYSIS

### A. Legal Standard

Section 205(g) of the Social Security Act provides, *inter alia*, that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," and that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

"In Social Security cases, the [c]ourt must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)). The

[2] The scheduled hearing was cancelled because "the claimant's attorney showed up without the claimant." (Tr. 31.) As plaintiff's attorney also failed to submit a written argument as ordered by the ALJ, the ALJ's decision is therefore based solely on the evidence of record. (Tr. 29-31.)

Commissioner's "findings of fact are conclusive when supported by substantial evidence in the record, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Hernández-Guzman v. Astrue, 2009 U.S. Dist. LEXIS 99213, at *5 (D.P.R. Oct. 23, 2009) (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971), cert. denied, 402 U.S. 976). Moreover, the First Circuit has held that a determination of substantiality must be made based on the record as a whole. See Ortíz, 955 F.2d at 769. However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Ortíz, 955 F.2d at 769 (citing Quiñones v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). "The resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the ALJ, not for the doctors or for the reviewing [c]ourts." López-Vargas, 518 F. Supp. 2d at 335 (citing Perales, 402 U.S. at 399). Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Quiñones Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

To establish entitlement to disability benefits, the claimant bears the burden of proving that he or she is disabled with the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S.

137, 146n.5, 146-47 (1987). It is well settled that a claimant is deemed to be disabled under the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The statute provides, in pertinent part, that:

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Claims for disability benefits are evaluated according to the five-step sequential evaluation process prescribed by Social Security regulations. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140-42.

> Through step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b). If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. See 20 C.F.R. §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant

> from performing work he/she has performed in the past. If the claimant is able to perform his/her previous work, ... he/she is not disabled. 20 C.F.R. § 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. 20 C.F.R. § 404.1520(f).

Sosa v. Comm'r of Soc. Sec., 550 F. Supp. 2d 279, 284 (D.P.R. 2008).

"The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of the alleged disability. Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform." Berríos Velez v. Barnhart, 402 F. Supp. 2d 386, 390 (D.P.R. 2005) (citing Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam); Ortíz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam)).

**B. The ALJ's Findings**

After evaluating the evidence on record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since March 6, 2002, the alleged onset date (20 C.F.R. § 404.1520(b) and § 404.1571, *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, chest pain, osteoarthritis, cervical and lumbar pain and spasms, and major depressive disorder (20 C.F.R. §

404.1520(c)). The claimant also has mild bilateral carpal tunnel syndrome and possible rheumatoid arthritis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to sit[,] stand and walk for about 6 hours daily in an 8 hour work day, lift and carry a maximum of 50 pounds and 25 pounds frequently and to otherwise function normally, from the physical standpoint. On the other hand, the claimant's severe mental impairment limits her to simple and detailed work activities.

6. The claimant is capable of performing past relevant work as cook at a school lunchroom. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from March 6, 2002 through [February 9, 2007] (20 C.F.R. § 404.1520(f)).

(Tr. 34-38.)

**C. The Medical Evidence Contained in the Record**

The administrative record contains, *inter alia*, the following medical evidence regarding plaintiff's physical conditions:

Dr. Noemí Varela Rosario ("Varela-Rosario"), who treated plaintiff from July 31, 2001 through May 7, 2002**,** reported that plaintiff suffered from an "ever present dull aching pain with acute episodes of intense pain once a week" in her lower back, right shoulder, and right arm, which radiated to her neck and legs, and prescribed physical therapy. (Tr. 390-400.)

On October 1, 2001, an echocardiogram report by cardiologist Dr. Edgardo Bermúdez Moreno ("Bermúdez-Moreno") found that plaintiff had mild mitral valve and mild tricuspid valve regurgitation, and an estimated left ventricular ejection fraction of 65-70%. (Tr. 380-87.)

On October 11, 2001, Dr. Roberto Nevares reported that plaintiff had been treated in 2000 for mild bilateral carpal tunnel syndrome, and was now reporting "pain and inflammation of the small joints of the fingers of both hands." (Tr. 327.) Dr. Knaveries found "swelling and tenderness of the distal and proximal interphalangeal joints compatible with an acute episode of osteoarthritis," and referred plaintiff for x-rays and a rheumatoid arthritis profile. Id.

Plaintiff's primary treating physician is Dr. Freddie Quiñones, who treated plaintiff from 1995 through June 18, 2002, and from January 2004 through the end of the period covered by this inquiry. (Tr. 401-03, 508-12.) On June 18, 2002, Dr. Quiñones diagnosed plaintiff with, among other things, fibromyalgia, lower back pain, heart disease and depression. (Tr. 401-03.) On October 2, 2006, Dr. Quiñones diagnosed plaintiff with fibromyalgia and rheumatoid arthritis, and reported that plaintiff suffered from generalized myalgia, arthralgia, fatigue, dizziness and limited movement of the upper and lower extremities. (Tr. 508.) In addition, Dr. Quiñones noted that plaintiff suffered from severe pain in her extremities, shoulders, and cervical and lumbar spine, and that she had been prescribed ansaids, steroids, muscle relaxants and physical therapy, without improvement. (Tr. 508.)

Plaintiff was treated by Dr. Humberto Ramírez Lorenzo ("Ramírez-Lorenzo") from April 2001 through May 2004. (Tr. 451-69.) On September 8, 2003, Dr. Ramírez-Lorenzo reported that plaintiff suffered from fibromyalgia, carpal tunnel syndrome and severe depression. (Tr. 454-56.) Plaintiff's symptoms included lower back pain, pain in her hands, shoulders, knees and neck, and edema and rigidity in her hands, shoulders and neck. (Tr. 454.) Dr. Ramírez-Lorenzo also opined

that she was "totally disabled" and could not work. (Tr. 455.) In a May 18, 2004 residual functional capacity questionnaire, Dr. Ramírez-Lorenzo indicated that plaintiff's symptoms included: multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent, severe headaches, numbness and tingling, anxiety, panic attacks, depression, carpal tunnel syndrome, and chronic fatigue syndrome. (Tr. 463.) Furthermore, Dr. Ramírez-Lorenzo assessed that plaintiff could only lift or carry objects weighing under ten pounds rarely, could sit, stand or walk for 6 hours out of an eight hour day, was unable to twist, stoop, crouch, or climb ladders, and could only occasionally climb stairs. (Tr. 465-66.)

Plaintiff was treated by rheumatologist Dr. Michael Babilonia Román ("Babilonia-Román") from March 1999 through November 1999, and resumed treatment with the physician in July 2006. (Tr. 388-89, 515-16.) In an October 5, 2006 report, Dr. Babilonia-Román diagnosed plaintiff with fibromyalgia.[3] (Tr. 516.)

On February 5, 2004, consultative neurologist Dr. Iris Acevedo-Marty evaluated plaintiff and determined that she suffered from "fibromyalgia by history," chronic lower back pain, chronic cervical pain, and severe cervical muscle spasms. (Tr. 477-84.)

The administrative record also contains, *inter alia*, the following medical evidence regarding plaintiff's mental conditions:

Plaintiff began receiving treatment for depression from at least as early as November 2002 at the Western Behavioral Health Center of Aguadilla. (Tr. 425-50.) At that time, plaintiff was diagnosed with a major depressive disorder. (Tr. 428.) During that visit, plaintiff stated that her

[3] Plaintiff claims that Dr. Babilonia-Román diagnosed plaintiff with rheumatoid arthritis and osteoarthritis in addition to fibromyalgia. (Docket No. 16, pp. 4-5.) However, the only legible diagnosis included in the translated report is fibromyalgia. (Tr. 516.)

condition was due to her physical ailments, and that she had been depressed for the last three months. (Tr. 432, 434.) Records indicate that plaintiff was subsequently diagnosed with severe recurrent depressive disorder on May 25, 2004, July 12, 2004, October 11, 2004, November 11, 2004, February 11, 2005, and February 6, 2006, and was diagnosed with a severe, single episode major depressive disorder on November 10, 2005. (Tr. 449-50, 524, 530, 532.)

On February 4, 2004, psychiatrist Dr. Alberto Rodríguez-Robles rendered a consultative evaluation of plaintiff, diagnosing her with severe single-episode major depressive disorder. (Tr. 469-76.) The psychiatrist noted that plaintiff appeared depressed, with psychomotor retardation, that her thoughts were characterized by self-deprecation, despair, and hopelessness, and that she suffered from diminished attention and concentration. (Tr. 475.) He found plaintiff to be oriented in the three spheres. (Tr. 476.) Dr. Rodríguez-Robles also determined that plaintiff was not capable of managing her own finances. Id.

On November 8, 2006, psychiatrist Dr. Japhet Gaztambide, who also worked at the Western Behavioral Health Center of Aguadilla, diagnosed plaintiff with a recurrent and severe major depressive disorder marked by the following symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; poverty of content of speech; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; emotional withdrawal or isolation; emotional lability; easy distractibility; memory impairment - short, intermediate, and long term; sleep disturbance; oddities of thought, perception, speech or behavior; and decreased need for sleep. (Tr. 533-36.) Based on

these findings, Dr. Gaztambide assessed that plaintiff was extremely limited in her ability to perform work-related activities. Id.

**D. Plaintiff's Objections to the Commissioner's Decision**

The findings of the Commissioner reflect an application of step four of the sequential evaluation process, in which the plaintiff must demonstrate that she can no longer perform her former work due to her impairment(s). See 20 C.F.R. § 404.1520(e); Manso-Pizarro, 76 F.3d at 17. In denying plaintiff's claim under this step, the ALJ first determined that plaintiff has:

> the residual functional capacity to sit, stand and walk for about 6 hours daily in an 8 hour work day, [and] lift and carry a maximum of 50 pounds and 25 pounds frequently and to otherwise function normally, from the physical standpoint. On the other hand, the claimant's severe mental impairments limits her to simple and detailed work activities.

(Tr. 37.) Based on this finding, the ALJ concluded that "[t]he claimant's conditions can be expected to result in pain and discomfort, precluding heavy, complex work, but [were] not of such disabling frequency and intensity as to prevent her from performing ... medium, simple, detailed work activity." (Tr. 37.) The ALJ thus found that plaintiff was capable of performing past relevant work as a school cook, noting that the job in question did not "require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 37.) Plaintiff argues that she is incapable of performing past relevant work, and that the ALJ's findings regarding her physical and mental capabilities were not based on substantial evidence. (Docket No. 16, pp. 7, 15, 17.)

**1. Plaintiff's Physical Impairments**

Plaintiff contends that the ALJ's determinations with regard to her physical limitations were not based on substantial evidence because i) the opinion fails to properly address plaintiff's diagnosis of fibromyalgia, ii) the ALJ substituted his own findings for those of a medical expert in concluding

that a diagnosis of rheumatoid arthritis was only a "possibility," and iii) the ALJ disregarded the physical residual functional capacity ("RFC") assessments of a treating physician and instead relied on assessments from non-treating physicians that lacked detail. (Docket No. 16, pp. 11-12, 17, 19-20.)

Fibromyalgia

Although records indicate that plaintiff was diagnosed with fibromyalgia, and the ALJ listed the condition as one of plaintiff's impairments, the ALJ's opinion does not address whether the ailment is severe enough to preclude substantial gainful activity or discuss its effect on plaintiff's ability to perform past relevant work.[4] (Tr. 26-38, 451-67, 477-84, 505-12, 513-16.) Therefore, the court hereby REMANDS the case for a determination of whether plaintiff's diagnosis of fibromyalgia, either alone or in combination with plaintiff's other impairments, meets or medically equals one of the listed impairments in 20 C.F.R. Par 404, Subpart P, Appendix 1, and – if not – for a determination of its effect on plaintiff's ability to perform past relevant work.

Rheumatoid Arthritis

In finding that rheumatoid arthritis constituted only a "diagnostic possibility," the ALJ referenced the limited support for such a diagnosis in the records of treating physicians Drs. Quiñones and Varela-Rosario, and noted in particular that the record lacked any "positive RA (rheumatoid arthritis) and Sedimentation Rate tests." (Tr. 35.) Records indicate that Dr. Quiñones diagnosed claimant with rheumatoid arthritis on October 2, 2006. (Tr. 508.) However, plaintiff points to no relevant laboratory reports or test results supporting Dr. Quiñones' diagnosis. (Docket

[4] The ALJ's opinion does cite a lack of evidence of "swelling, deformities, increased heat or significant limitations in the range of motion of the major joints," some or all of which may be symptoms of fibromyalgia; however, as plaintiff also suffers from osteoarthritis, and cervical and lumbar pain and spasms, it is unclear which impairment the ALJ is referring to. (Tr. 26-38); (Docket No. 16, p. 20.)

No. 16.) Dr. Valera-Rosario, a rheumatologist who treated plaintiff in 2001 and 2002, did not diagnose claimant with rheumatoid arthritis, nor did Dr. Babilonia-Román, a rheumatologist who treated claimant in 1999 and 2006.[5] (Tr. 388-400, 513-16.) A consultant evaluation by neurologist Dr. Acevedo on February 5, 2004 also does not mention rheumatoid arthritis. (Tr. 477-84.) In addition, plaintiff does not put forth any additional evidence in her medical records from the State Insurance Fund or the Aguadeño Physical Therapy Center in support of such a diagnosis. (Tr. 267-305, 306-379.) In social security cases, the burden is on the plaintiff to provide an adequate record from which determinations of impairment can be made. See Gray v. Heckler, 760 F.2d 369, 371, 372 (1st Cir. 1985). Since a diagnosis of rheumatoid arthritis is only found in one doctor's records, and is not accompanied by any supporting evidence, the court finds that the ALJ was within his discretion in determining that such a diagnosis was only a possibility. See Irlanda-Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) ("[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence.").

Physical RFC Assessments

Plaintiff also claims that the ALJ erred in relying on physical RFC assessments submitted by non-treating physicians. (Docket No. 16, pp. 11-12, 17.) While not cited in the ALJ opinion, the physical RFC assessments from Dr. Idalia Pedroza López ("Pedroza-López"), dated September 13, 2002, and Dr. Osvaldo Rivera Marrero ("Rivera-Marrero") and José Pesquera García ("Pesquera-García"), dated March 23, 2004, closely mirror the ALJ's findings as to plaintiff's physical capabilities. (Tr. 37, 406-13, 487-94.) However, in finding that plaintiff retained the capacity "to

[5] Dr. Valera-Rosario is incorrectly identified as a neurologist in the ALJ's opinion. (Tr. 35.) The ALJ opinion also incorrectly states that Dr. Babilonia-Román reported that claimant suffered from rheumatoid arthritis in his treatment summary dated October 5, 2006. (Tr. 35, 516.)

sit, stand and walk for about 6 hours daily in an 8 hour work day, [and] lift and carry a maximum of 50 pounds and 25 pounds frequently and to otherwise function normally, from the physical standpoint," the ALJ disregarded the RFC assessment submitted by treating physician Dr. Ramírez-Lorenzo, dated May 18, 2004. (Tr. 463-68.) Dr. Ramírez-Lorenzo's determined that plaintiff could only lift or carry objects less than ten pounds rarely, could sit, stand or walk for 6 hours out of an eight hour day, was unable to twist, stoop, crouch, or climb ladders, and could only occasionally climb stairs. (Tr. 466.) The physician also found that plaintiff was unable to grasp, turn or twist objects, manipulate objects with her fingers, or reach her arms over her head. (Tr. 467.) Generally, ALJs gives "more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments." 20 C.F.R. § 404.1527(d)(2). In light of the fact that the ALJ failed to address the physical RFC assessment submitted by treating physician Dr. Ramírez-Lorenzo, whose findings deviated so sharply from the ALJ's determinations, further explanation of the ALJ's decision is necessary to determine whether it is supported by substantial evidence. The court therefore REMANDS the case for explanation and clarification regarding the ALJ's determination regarding plaintiff's physical RFC.

**2. Plaintiff's Mental Impairments**

As for the ALJ's findings regarding plaintiff's mental capacities, plaintiff argues that by not granting controlling weight to the opinion of a treating psychiatrist, the ALJ erred in determining that plaintiff's depression did not meet the severity requirements of section 12.04 of the Listing of Impairments, and did not properly take into consideration the ailment's effect on plaintiff's ability to perform past relevant work. (Docket No 16, pp. 19-20.)

While acknowledging that plaintiff suffered from depression, the ALJ found that "the severity of ... [plaintiff's] mental condition does not meet or equal in severity the requirements of section 12.04 of the Listing of Impairments." (Tr. 34, 36); see 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Specifically, the ALJ determined that – as a result of her depressive disorder – plaintiff's daily activities had been "moderately restricted, [that] she has moderate difficulties in maintaining social functioning and has presented moderate difficulties in maintaining concentration, persistence and pace, without episodes of deterioration or decompensation in work and work-like settings." (Tr. 36.)

In making such a determination, the ALJ rejected the findings of treating psychiatrist Dr. Gaztambide, who, in a mental impairment RFC assessment dated November 8, 2006, concluded, *inter alia*, that plaintiff's sustained concentration and social interaction capacities were "extremely limited" and that her understanding and memory capacity were "markedly" to "extremely limited."[6] (Docket No. 16, p. 24); (Tr. 533-36.) Such a finding – if adopted by the ALJ – would satisfy the requirements of Section 12.04 of the Listing of Impairments, meaning that plaintiff would be conclusively presumed to be disabled. See 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. It also appears that the ALJ's opinion failed to accurately state Dr. Gaztambide's conclusions, indicating that Dr. Gaztambide found only "marked restriction" in the claimant's sustained concentration and social interaction capacities, which would not qualify under Section 12.04 of the Listing of Impairments. (Tr. 36.)

[6]It is unclear whether plaintiff was a regular patient of Dr. Gaztambide. Although in Dr. Gaztambide's mental RFC he notes that patient's first visit was November 25, 2002, it is unclear whether that is referring to plaintiff's first appointment with Dr. Gaztambide or to plaintiff's first appointment at the Western Behavioral Healthcare Center. (Tr. 533.)

The ALJ stated – without elaboration – that Dr. Gaztambide's opinion was "not supported by the physician's own medical findings, nor by those on the whole record." (Tr. 36.) However, Dr. Gaztambide's RFC assessment is the only file from the psychiatrist included in the administrative record, and is consistent in its findings. (Tr. 533-36.) In it, Dr. Gaztambide diagnosed plaintiff with recurrent major depressive disorder marked by the following symptoms: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; thoughts of suicide; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; poverty of content of speech; mood disturbance; difficulty thinking or concentrating; psychomotor agitation or retardation; persistent disturbances of mood or affect; emotional withdrawal or isolation; emotional lability; easy distractibility; memory impairment - short, intermediate, and long term; sleep disturbance; oddities of thought, perception, speech or behavior; and decreased need for sleep. (Tr. 533.) Dr. Gaztambide also found claimant's capacities for adaptation to be "extremely limited," and estimated that claimant's impairments or treatment would cause her to be absent from work more than four days per month. (Tr. 536.)

Dr. Gaztambide's conclusions are also supported by the findings of other treating physicians. Yet, the ALJ's opinion being reviewed fails to accurately portray the record on this point, stating that the examining physicians' diagnostic impression "fluctuated from single episode major depressive disorder to recurrent major depressive disorder due to medical conditions ... [and that] [t]he single episode characterization prevailed." (Tr. 35.) In fact, the record indicates that claimant was diagnosed with a severe recurrent major depressive disorder 6 times, and was only diagnosed with a severe, single episode major depressive disorder once by a treating physician, on November 10,

2005, as well as by consulting psychiatrist Dr. Robles-Rodríguez on February 4, 2004.[7] (Tr. 449-50, 473-76, 524, 530, 532.)

The ALJ instead adopted the conclusions of Dr. Luis Vecchini, who – in an April 3, 2004 psychiatric review of plaintiff – found that her daily living, social function, concentration, persistence, and pace were "moderately" limited, without any episodes of decompensation. (Tr. 496-99.) In a mental RFC assessment from the same date, Dr. Vecchini found that plaintiff's understanding and memory, sustained concentration and persistence, social interaction, and adaptation were all either "not significantly limited" or "moderately limited." (Tr. 499-500.) The psychiatrist also found that plaintiff could "remember to carry out simple instructions and detailed ones and [could] sustain attention for 2 hour intervals." (Tr. 501.) Dr. Vecchini further determined that plaintiff could interact with supervisors and adjust to changes in the work setting. Id.

However, as stated above, plaintiff was diagnosed with severe recurrent major depressive disorder following Dr. Vecchini's report. (Tr. 449-50, 524, 530, 532.) Considering the chronic and often deteriorating nature of plaintiff's conditions, as well as the evidence in the record as to the prevalence of a diagnosis of severe recurrent major depressive disorder by plaintiff's treating physicians, it is unclear whether the ALJ took proper consideration of plaintiff's worsening condition in making his determination. See Morales-Colón v. Comm'r of Soc. Sec., 245 F. Supp. 2d 395, 398 (D.P.R. 2003) ("[a] treating physician's opinion will be considered controlling 'if it is well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record.'") In light of the above, the court finds that the basis for the ALJ's decision is unclear, and

[7] Records indicate that plaintiff was diagnosed with severe recurrent major depressive disorder on the following dates: May 25, 2004, July 12, 2004, October 11, 2004, November 11, 2004, February 11, 2005, and February 6, 2006. (Tr. 449-50, 524, 530, 532.)

further explanation of his decision is warranted in order to appropriately review it. Therefore, the case is REMANDED with instructions to the Commissioner for additional explanation or clarification regarding the basis for the ALJ' determination regarding plaintiff's depression.

**3. Plaintiff's Additional Arguments**

Plaintiff also contends that the ALJ's determination regarding her capacity to perform past relevant work was not based on substantial evidence since he did not make any finding as to the requirements of plaintiff's past relevant work. (Docket No. 16, pp. 15-16.) Further, plaintiff argues that the ALJ should have questioned a vocational expert as to whether plaintiff could perform past relevant work or alternative work. (Docket No. 16, p. 22.)

Plaintiff argues that the ALJ erred by not performing a function-by-function comparison of plaintiff's RFC to her past relevant work. (Docket No. 16, pp. 15-16.) Social Security Ruling ("SSR") 82-62, SSR LEXIS 27, cited by plaintiff, requires that an ALJ opinion present a "clear picture of the case," showing how specific evidence leads to a conclusion. Id. at *8. Plaintiff's disability and work history reports contain several descriptions by plaintiff of her job as a school cook that include different estimations of the physical and mental requirements of her former work. (See Tr. 132, 149, 208.) Some of those descriptions characterize plaintiff's responsibilities as requiring a greater level of physical strength than the ALJ determined that plaintiff currently possesses, which would suggest that plaintiff is – contrary to the ALJ's findings – unable to perform her past relevant work. (Tr. 37; see, e.g., Tr. 132.) As the ALJ did not address in his opinion the requirements of plaintiff's past relevant work, or cite to the pertinent portion of the record from which such a finding can be drawn, it is unclear whether the ALJ's finding is supported by sufficient evidence. See Mercado v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 126567, at *18-*20 (D.P.R.

Dec. 1, 2010). Therefore, the court hereby REMANDS to clarify the record as to the physical and mental demands of plaintiff's past job. See SSR 82-62, SSR LEXIS 27.

Finally, plaintiff claims that the ALJ should have enlisted the assistance of a vocational expert, both to determine the impact of plaintiff's "limited capacity of attention and concentration" on her ability to perform past relevant work and to determine whether plaintiff is capable of performing other work in the economy. (Docket No. 16, pp. 21-23.) However, the First Circuit has stated "at step 4 of the disability determination process ... the ALJ is not required to elicit the testimony of a vocational expert." Santos Martinez v. Secretary of Health & Human Services, No. 94-2152, 1995 U.S. App. LEXIS 10434, at *5 (1st Cir. May 9, 1995)(per curiam, unpublished). Santiago v. Commissioner of Social Security, No. 97-2088, 1998 U.S. App. LEXIS 5374, at *3 (1st Cir. March, 18, 1998) (per curiam, unpublished); see also Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (holding that because claimant failed to meet his burden of establishing a disability that prevented him from performing his past relevant work, "the ALJ was under no obligation to elicit the testimony of a vocational expert"). Furthermore, as the ALJ determined that plaintiff was able to perform past relevant work, the fifth step of the analysis – in which it is determined whether plaintiff can perform other work in the economy – was never reached. See 20 C.F.R. § 404.1520(f). Therefore, the court finds that the ALJ acted within his discretion in not enlisting the aid of a vocational expert.

## III. CONCLUSION

Based on the foregoing, the case is REMANDED with instructions to the Commissioner to provide:

- a determination of whether plaintiff's diagnosis of fibromyalgia, either alone or in combination with plaintiff's other impairments, meets or medically equals one of the listed impairments in 20 C.F.R. Par 404, Subpart P, Appendix 1, and – if not – for a determination of its effect on plaintiff's ability to perform past relevant work;
- additional explanation or clarification of the ALJ's determinations regarding plaintiff's physical RFC;
- additional explanation or clarification of the ALJ's determinations regarding plaintiff's depression; and
- a clarification of the record as to the physical and mental demands of plaintiff's past work as a school cook.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of February, 2011.

s/Marcos E. López
U.S. Magistrate Judge